**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(Eastern Division)**

_____

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| THE EDUCATION RESOURCES | ) | Case No. 08-12540-HJB |
| INSTITUTE, INC., | ) | |
|                     Debtor. | ) | |
| _____ | ) | |
| OFFICIAL COMMITTEE OF UNSECURED | ) | |
| CREDITORS OF THE EDUCATION RESOURCES | ) | |
| INSTITUTE, INC., on behalf of itself and, derivatively, | ) | |
|     on behalf of the Debtor and bankruptcy estate, | ) | |
| | ) | |
|                     Plaintiff, | ) | Adv. No. 09-01040 |
| v. | ) | |
| | ) | |
| The National Collegiate Master Student Loan Trust I | ) | |
| (a/k/a The National Collegiate Student Loan Trust 2001 | ) | |
| A/R 1, 2, 3) | ) | |
| The National Collegiate Trust 2001-CP1 | ) | |
| The National Collegiate Trust 2002-CP1 | ) | |
| The National Collegiate Student Loan Trust 2003-1 | ) | |
| The National Collegiate Student Loan Trust 2004-1 | ) | |
| The National Collegiate Student Loan Trust 2004-2 | ) | |
| The National Collegiate Student Loan Trust 2005-1 | ) | |
| The National Collegiate Student Loan Trust 2005-2 | ) | |
| The National Collegiate Student Loan Trust 2005-3 | ) | |
| The National Collegiate Student Loan Trust 2006-1 | ) | |
| The National Collegiate Student Loan Trust 2006-2 | ) | |
| The National Collegiate Student Loan Trust 2006-3 | ) | |
| The National Collegiate Student Loan Trust 2006-4 | ) | |
| The National Collegiate Student Loan Trust 2007-1 | ) | |
| The National Collegiate Student Loan Trust 2007-2 | ) | |
| The National Collegiate Student Loan Trust 2007-3 | ) | |
| The National Collegiate Student Loan Trust 2007-4; | ) | |
| | ) | |
| WILMINGTON TRUST COMPANY, | ) | |
| as Owner-Trustee; | ) | |
| | ) | |
| U.S. BANK NATIONAL ASSOCIATION | ) | |
| as Indenture Trustee and custodian; and | ) | |
| | ) | |
| FIRST MARBLEHEAD DATA SERVICES, INC. | ) | |
| as Administrator for Trusts, | ) | |
|                           Defendants. | ) | |

**FIRST AMENDED ADVERSARY COMPLAINT**

1. The Official Committee of Unsecured Creditors of The Education Resources Institute, Inc. (the "Committee") brings this action, in its own behalf as an interested party and derivatively on behalf of the above-named debtor, The Education Resources Institute Inc. ("TERI" or "Debtor"), pursuant to that certain Order dated June 23, 2008 [Docket No. 361] ("Trusts Order") and the Order dated November 18, 2008 [Docket No. 616] authorizing this action, against the defendant Trusts. In this action, the Committee seeks, among other things, (i) declaratory relief as to the nature, validity and perfection of the purported security interests granted by TERI to the Trusts; (ii) avoidance of any and all such security interests as may be determined to be unperfected; (iii) declaratory relief as to the applicability of Section 552 of the Bankruptcy Code to the Trusts' purported security interests not otherwise avoidable; and (iv) recovery of certain postpetition transfers made by TERI to the so-called "Pledged Accounts" from funds that were not subject to enforceable or perfected liens of the Trusts at the time(s) such transfer(s) were made.

**Jurisdiction and Venue**

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(b), and Rule 201 of the Local Rules of the United States District Court for the District of Massachusetts. This is a core proceeding pursuant to of 28 U.S.C. § 157(b)(2)(A), (E), (K), and (O).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

4. This Complaint commences an Adversary Proceeding pursuant to Fed. R. Bankr. P. 7001(1) and (2).

**Parties**

5. On information and belief, the defendant U.S. Bank National Association ("U.S. Bank") is a national banking association with a principal place of business at One Federal Street, 3rd Floor, Boston, Massachusetts. U.S. Bank is named herein solely in its capacity as (i) "indenture trustee," and (ii) custodian with respect to certain so-called "Pledged Accounts" as described further below.

6. On information and belief, the following defendants are Delaware statutory trusts: The National Collegiate Master Student Loan Trust I (a/k/a The National Collegiate Student Loan Trust 2001 A/R 1, 2, 3), The National Collegiate Trust 2001-CP1, The National Collegiate Trust 2002-CP1, The National Collegiate Student Loan Trust 2003-1, The National Collegiate Student Loan Trust 2004-1, The National Collegiate Student Loan Trust 2004-2, The National Collegiate Student Loan Trust 2005-1, The National Collegiate Student Loan Trust 2005-2, and The National Collegiate Student Loan Trust 2005-3, The National Collegiate Student Loan Trust 2006-1, The National Collegiate Student Loan Trust 2006-2, The National Collegiate Student Loan Trust 2006-3, The National Collegiate Student Loan Trust 2006-4, The National Collegiate Student Loan Trust 2007-1, The National Collegiate Student Loan Trust 2007-2, and The National Collegiate Student Loan Trust 2007-3, and The National Collegiate Student Loan Trust 2007-4 (collectively, the "Trusts").

7. On information and belief, the defendant Wilmington Trust Company ("Wilmington") is a Delaware statutory trust with a principal place of business at 1100 North Market Street, Wilmington, Delaware. On information and belief, Wilmington is the owner-trustee of each of the Trusts. Wilmington is named herein solely in its capacity as "owner-trustee" for each Trust.

8. On information and belief, First Marblehead Data Services, Inc. ("FMDS") is a Massachusetts corporation with a principal place of business at 800 Boylston Street, 34th Floor, Boston, Massachusetts. Pursuant to various agreements among the Defendants, at all relevant times, FMDS acted as administrator, with power of attorney, for the Trusts, and was authorized to direct the actions of U.S. Bank that are the subject of this Complaint. Accordingly, many of the transactions that are the subject of this Complaint occurred by, through, or at the direction of, FMDS.

9. On April 7, 2008, TERI filed a voluntary petition for relief pursuant to Chapter 11 of title 11, 11 U.S.C., §§ 101, et seq ("Bankruptcy Code" or "Code") in the United States Bankruptcy Court for the District of Massachusetts ("Court") commencing the above-captioned Chapter 11 proceedings ("Proceedings").

10. On April 30, 2008, the Office of the United States Trustee formed and appointed the Committee pursuant to Section 1102 of the Code.

11. U.S. Bank is the indenture trustee for each of the Trusts. In such capacity, U.S. Bank asserts or may assert an interest in certain Trust assets and claims against TERI, as secured party under the trust indentures for each Trust. U.S. Bank holds certain funds on deposit transferred to it by TERI pursuant to certain prepetition so-called "Deposit and Security Agreements" described further below.

**Background Facts Regarding the TERI Guaranty Program**

12. TERI guaranties certain private student loans ("Loans") made by financial institutions ("Lenders"). The guaranties are documented by one or more separate "Guaranty Agreements" between TERI and each Lender. Each Guaranty Agreement incorporates one or more particular "loan programs" developed by TERI and/or the Lender that sets forth detailed

"loan guidelines," including, without limitation, underwriting standards. Loan programs have evolved over time and vary considerably from one Lender to the next.

13. Pursuant to the Guaranty Agreement, TERI receives a "Guaranty Fee." A small portion of the Guaranty Fee is used by TERI to fund its operations. Most of the Guaranty Fee is deposited in a "Pledged Account" to serve as collateral for TERI's obligations to the particular Lender. In connection with each Guaranty Agreement, a certain Deposit and Security Agreement ("DSA") among TERI, the Lender and the bank holding the Pledged Account, contains various provisions which describe the collateral, establish the Pledged Account and purport to grant certain security interests therein. The DSA and related documentation give the Lender a wide degree of control over the funds in the Pledged Account, including the ability to invest the funds within certain parameters, known as "permitted investments."

14. The Guaranty Agreements and DSAs contemplate that the Loans will be securitized. When that occurs, the Loans are sold to a special purpose entity, specifically a trust established for the purpose of holding the Loans. On information and belief, the owner-trustee of each Trust holding such securitized student loans is Wilmington Trust. The current "indenture trustee" for each of the Trusts is U.S. Bank.

**Securitization**

15. There have been a series of securitizations of Loans beginning in 1994. When a sufficient number of Loans have become eligible for securitization, a new trust is formed to purchase the eligible Loans that were not previously securitized.

16. At the time of securitization, the participating Lenders sell those Loans to the newly formed trust and assign their rights with respect to those Loans under their respective Guaranty Agreements to each Trust, and a new Pledged Account is created to hold all of the funds previously held in the initial "pooled" or pledged accounts that were established for the

Lenders with respect to those Loans. A new DSA is executed among TERI, the Trust and First Marblehead Corporation ("FMC"). For each securitization, a separate "Trust Indenture" is executed simultaneously among the Trust, as Owner, and the indenture trustee, whereby, among other things, the indenture trustee is authorized to issue securities (usually in the form of notes or other collateralized debt obligations) on behalf of the Trust for sale to investors. FMC serves as "administrator" for all of the Trusts, essentially managing the Trust assets and operations. FMC also is appointed "TERI's true and lawful attorney" to collect money due TERI to the extent such money is part of the Trust's purported collateral.

17. At the time of securitization, each Trust assigns or "pledges" the Pledged Account to U.S. Bank as indenture trustee pursuant to the trust indenture and a deposit and security agreement with the Trust (the "TDSA"). Any security interest granted by TERI to the Trust under the TDSA is pledged and/or assigned by the Trust to U.S. Bank as indenture trustee under the trust indenture relating to the securitization.

18. In addition to its role as indenture trustee, U.S. Bank also serves as custodian, or more specifically, a "securities intermediary" within the meaning of the Uniform Commercial Code, with respect to each Pledged Account. In that capacity, U.S. Bank maintains each Trust's Pledged Account at U.S. Bank, and it serves as a securities intermediary and/or depository with respect to funds held in each Pledged Account that are or may be held in the form of permitted investments.

**The Security Interests**

19. Each TDSA sets forth, among other things, the legal basis by which the Trusts have security interests that are perfected by control in their respective Pledged Accounts pursuant to UCC § 9-104 (and to the extent such funds are invested in securities, § 8-104), and describes the obligations of the parties with respect to the remaining collateral in the Trusts.

ID # 583136v02/16357-2/ 04.30.2009

6

20. Property in the Pledged Accounts is not limited to cash. The funds may be invested at the direction of the Trusts, and in practice are so invested, in various securities and instruments, including, without limitation, certificates of deposit, U.S. Treasury Bonds, securities, commercial paper and other "permitted investments."

21. Upon securitization, the assets of a Trust consist principally of Loans and contingent guaranty claims against TERI. The Trusts contend that these contingent guaranty claims are collateralized by (a) their respective Pledged Account, and/or (b) the "Recoveries" as defined in the respective DSA.

22. When a securitized Loan goes into default, pursuant to the applicable Guaranty Agreement, the Trust has the right to sell the Loan to TERI for a purchase price equal to the then outstanding Loan balance. The defaulted Loan is then endorsed to TERI in a manner sufficient to convey title. TERI pays the purchase price for the acquisition of the defaulted Loan from funds in the applicable Pledged Account. The collections obtained by TERI on defaulted Loans it has acquired from the Trust are considered one type of "Recovery." The prepetition practice was to deposit all such Recoveries (net of collection costs) into the applicable Pledged Account.

23. Over time, a defaulted Loan may become "Rehabilitated", when the borrower has made four to six consecutive "on time" monthly payments, depending on the exact terms of the applicable Guaranty Agreement and Loan Program. At that point, TERI may sell the Rehabilitated Loan back to the applicable Trust. The proceeds from such sale are also considered a "Recovery" and are also required by the applicable DSA to be deposited by TERI into the applicable Pledged Account. Thus, Recoveries include both collections on defaulted Loans, as well as funds from the sale of Rehabilitated Loans back to the Trusts.

24. At the time of securitization, and pursuant to the terms of the trust indenture, any security interest held by each subject Trust in Recoveries is pledged to U.S. Bank as indenture trustee.

25. Each TDSA expressly excludes defaulted Loans from the grant of the security interest to the Trusts. Further, at least one TDSA, and possibly others, excludes Recoveries not yet deposited in the Pledged Account from the grant of the security interest.

26. The Trusts do not have a security interest in defaulted Loans sold to TERI or the underlying promissory notes evidencing such Loans.

## The Trusts are Unperfected in the Recoveries and the Defaulted Loans

27. The Recoveries, to the extent they are payments made by borrowers on account of defaulted Loans, are "payment intangibles" within the meaning of the Uniform Commercial Code ("UCC") Section 9-102(a)(61).

28. To perfect an interest in such Recoveries, the Trusts are required to have possession of or control over the Recoveries as provided under the UCC, or a UCC-1 financing statement must have been filed that adequately describes such collateral.

29. The Trusts do not have possession of or control over Recoveries prior to their being deposited in the Pledged Accounts ("Undeposited Recoveries"). Nor do the Trusts have possession of or control over the defaulted Loans sold to TERI.

30. The Trusts' financing statements do not encompass Undeposited Recoveries or defaulted Loans sold to TERI within the collateral description, but limit the collateral to funds and other property in the Pledged Accounts.

31. To the extent any Trust has a security interest in defaulted Loans and/or any Undeposited Recoveries therefrom, such security interests are unperfected and avoidable under the trustee's avoidance powers pursuant to Section 544 of the Code.

**Exclusion of Security Interests Pursuant to Section 552 of the Code**

32. Whether or not under applicable nonbankruptcy law the Trusts have valid, perfected security interests in the Recoveries, the following are excluded from the Trusts' security interests as after-acquired property pursuant to Section 552(a) of the Code: (a) any and all postpetition Recoveries on defaulted Loans purchased by TERI from the Trusts prepetition and owned by TERI as of the Petition Date, and (b) any and all Recoveries on defaulted Loans acquired by TERI from the Trusts postpetition.

33. Postpetition Recoveries from such defaulted Loans do not fall within the scope of Section 552(b) of the Code, because they are not the proceeds, products, offspring or profits of property in which the Trusts had a security interest as of the Petition Date.

34. On information and belief, TERI has made postpetition transfers of Recoveries to the Pledged Accounts for the benefit of the Trusts. Since such transfers have the effect of subjecting property of the estate to the liens of the Trusts, which property would otherwise not have been so subject, such transfers are avoidable pursuant to Section 549 of the Code.

35. As of the Petition Date, TERI owned some defaulted Loans purchased from each of the Trusts prepetition. On information and belief, the aggregate balance of such defaulted Loans as of the Petition Date is $322,598,185.84. On information and belief, TERI has received postpetition, and will continue to receive postpetition, Recoveries on such defaulted Loans. On information and belief, as of September 30, 2008, TERI has received $8,856,396 in postpetition Recoveries on such defaulted Loans.

36. On information and belief, since the Petition Date, TERI has purchased some defaulted Loans from each of the Trusts. On information and belief, the current aggregate outstanding principal balance of such defaulted Loans acquired postpetition exceeds $230,000,000. On information and belief, TERI will receive Recoveries from some or all of

such defaulted Loans.  On information and belief, as of September 30, 2008, TERI has received $1,551,321 in postpetition Recoveries on such defaulted Loans.

37. On information and belief, prior to June 23, 2008, TERI transferred postpetition Recoveries to the Pledged Accounts for all of the Trusts in the aggregate principal balance of approximately $2,289,474.  Such transfers were unauthorized, or, if authorized, final disposition of such funds was authorized expressly subject to further Court order.

38. On information and belief, since June 23, 2008, TERI has transferred postpetition Recoveries to the Pledged Accounts for at least 11 Trusts in the aggregate principal balance amount of approximately $5,667,779.  Such transfers were expressly prohibited by the Trusts Order which required such Recoveries to be segregated pending further Court order.

39. On information and belief, TERI also has transferred certain post-petition Recoveries into segregated accounts established pursuant to the Trusts Order.

40. The Trusts claim they have a valid, perfected security interest in all postpetition Recoveries.  The Committee contends that the Trusts lack a perfected security interest in any and all postpetition Recoveries irrespective of whether such Recoveries were deposited into a Pledged Account or a segregated account in accordance with the Trusts Order.  The Trusts claim they have a valid, perfected security interest in defaulted Loans purchased by TERI from the Trusts.  The Committee contends that the Trusts lack a perfected security interest in any and all defaulted Loans.

### Count I
**(Declaratory Relief)**

41. The Committee repeats and incorporates by reference herein the allegations in each and every other paragraph of this Complaint.

42. There is an actual and justiciable controversy between the parties with respect to the enforceability, perfection and/or scope of the security interests of the Trusts in property of TERI's bankruptcy estate other than property that was on deposit in the Pledged Accounts as of the Petition Date. Declaratory judgment is appropriate pursuant to 28 U.S.C. §2201(a) and 28 U.S.C. 157(b)(1).

## Count II
### (Avoidance of Security Interests Under Sections 544 and 549 of the Code)

43. The Committee repeats and incorporates by reference herein the allegations in each and every other paragraph of this Complaint.

44. Pursuant to Section 544 of the Bankruptcy Code, the security interests asserted by the Trusts against defaulted Loans and/or Recoveries on defaulted Loans not deposited in a Pledged Account as of the Petition Date are unperfected and avoidable by TERI.

45. Pursuant to Section 549 of the Bankruptcy Code and the terms of the Trusts, the postpetition transfer of Recoveries to Pledged Accounts, including those that occurred prior to and subsequent to June 23, 2008, were unauthorized and/or created an unauthorized perfection by control of property of the estate that was otherwise avoidable under Section 544 of the Code.

## Count III
### (Recovery of Avoidable Transfers from U.S. Bank)

46. The Committee repeats and incorporates by reference herein the allegations in each and every other paragraph of this Complaint.

47. On information and belief, the postpetition transfers of Recoveries into Pledged Accounts placed such Recoveries under the control of U.S. Bank. To the extent such transfers occurred prior to June 23, 2008, such transfers were subject to further order of this Court. To the

extent such transfers occurred on or after June 23, 2008, such transfers were in violation of the Trusts Order.

48.    Pursuant to Section 550 of the Bankruptcy Code, TERI may recover from U.S. Bank all postpetition transfers of Recoveries into Pledged Accounts which transfers were made on account of or on behalf of the Trusts.

### Prayer for Relief

WHEREFORE, plaintiff, on its own behalf and derivatively on behalf of the Debtor, requests that the Court enter judgment in its favor as follows:

(1)    declaring that

    a. TERI owns and has good title to any and all defaulted Loans it acquired from the Trusts prior to and after the Petition Date other than Rehabilitated Loans which TERI sold back to the Trusts and did not subsequently re-acquire;

    b. the Trusts do not have security interests in any of the defaulted Loans owned by TERI on or after the Petition Date;

    c. any security interest that the Trusts have or assert in Undeposited Recoveries from defaulted Loans owned by TERI on or after the Petition Date are unperfected under the UCC and avoidable pursuant to Section 544 of the Bankruptcy Code;

    d. whether or not perfected and regardless of the terms of the DSA's or any other prepetition agreements, pursuant to Section 552 of the Bankruptcy Code, the following property is not subject to the security interests of the Trusts:

        i. Recoveries on defaulted Loans owned by TERI as of the Petition Date,

      ii. Recoveries on defaulted Loans acquired by TERI after the Petition Date; and

      iii. defaulted Loans acquired by TERI after the Petition Date; and

  e. any security interests which the Trusts assert against defaulted Loans owned by TERI, or Recoveries from defaulted Loans owned by TERI that were not deposited in a Pledged Account prior to the Petition Date are avoidable pursuant to Sections 544 and 549 of the Bankruptcy Code;

(2) avoiding, pursuant to Section 544 of the Bankruptcy Code, any security interests asserted by the Trusts against defaulted Loans and/or Recoveries on defaulted Loans not deposited in a Pledged Account as of the Petition Date;

(3) avoiding any and all post-petition transfers of Recoveries to the Pledged Accounts;

(4) ordering the Trusts to pay to the Debtor an amount equal to the sum of all post-petition transfers of Recoveries to the Pledged Accounts;

(5) awarding plaintiff prejudgment interest, costs and attorney's fees; and

(6) awarding plaintiff such other and further relief as this Court deems meet and just.

        OFFICIAL COMMITTEE OF UNSECURED CREDITORS, on behalf of itself and derivatively, on behalf of the Debtor and the bankruptcy estate,

        By its conflicts counsel,

        /s/ David J. Reier
        David J. Reier (BBO No. 546202)
        Nicholas J. Nesgos (BBO No. 553177)
        POSTERNAK BLANKSTEIN & LUND LLP
        Prudential Tower
        800 Boylston Street, 33rd Floor
        Boston, Massachusetts 02199
        Telephone: (617) 973-6100
        Facsimile: (617) 367-2315
        Email:  dreier@pbl.com

Dated:  April 30, 2009

## CERTIFICATE OF SERVICE

IT IS CERTIFIED that the foregoing document was filed this 30th day of April 2009 through the ECF filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

        /s/ David J. Reier