## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
### (Eastern Division)

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | Case No. 08-12540-HJB |
| THE EDUCATION RESOURCES ) | |
| INSTITUTE, INC., ) | |
|     Debtor. ) | |
| ) | |
| OFFICIAL COMMITTEE OF UNSECURED ) | |
| CREDITORS OF THE EDUCATION RESOURCES ) | |
| INSTITUTE, INC., on behalf of itself and, derivatively, ) | |
|    on behalf of the Debtor and bankruptcy estate, ) | |
| ) | |
|         Plaintiff, ) | Adv. No. 09-01040 |
| v. ) | |
| ) | |

The National Collegiate Master Student Loan Trust I
(a/k/a The National Collegiate Student Loan Trust 2001
A/R 1, 2, 3)
The National Collegiate Trust 2001-CP1
The National Collegiate Trust 2002-CP1
The National Collegiate Student Loan Trust 2003-1
The National Collegiate Student Loan Trust 2004-1
The National Collegiate Student Loan Trust 2004-2
The National Collegiate Student Loan Trust 2005-1
The National Collegiate Student Loan Trust 2005-2
The National Collegiate Student Loan Trust 2005-3
The National Collegiate Student Loan Trust 2006-1
The National Collegiate Student Loan Trust 2006-2
The National Collegiate Student Loan Trust 2006-3
The National Collegiate Student Loan Trust 2006-4
The National Collegiate Student Loan Trust 2007-1
The National Collegiate Student Loan Trust 2007-2
The National Collegiate Student Loan Trust 2007-3
The National Collegiate Student Loan Trust 2007-4;

WILMINGTON TRUST COMPANY,
as Owner-Trustee;

U.S. BANK NATIONAL ASSOCIATION
as Indenture Trustee and custodian; and

FIRST MARBLEHEAD DATA SERVICES, INC.
as Administrator for Trusts,
            Defendants.

**PLAINTIFF'S OPPOSITION TO THE MOTION OF DEFENDANTS WILMINGTON TRUST COMPANY AND FIRST MARBLEHEAD DATA SERVICES, INC. TO DISMISS FIRST AMENDED ADVERSARY COMPLAINT**

## I.    INTRODUCTION

The Official Committee of Unsecured Creditors of the Education Resources Institute, Inc. (the "Committee") submits this memorandum to respond to and oppose the Motion to Dismiss the Committee's First Amended Adversary Complaint filed by defendants Wilmington Trust Company ("Wilmington") and First Marblehead Data Services, Inc. ("FMDS") (collectively, the "Defendants"). [Docket No. 43]  This Opposition also responds to the Defendants' Memorandum of Law in Reply to Plaintiff's Opposition to Motion to Dismiss and in Support of Defendants' Motion to Dismiss First Amended Adversary Complaint (the "Reply Memorandum"). [Docket No. 44]  Plaintiffs incorporate by reference all arguments made in its Opposition to the Defendants' Motion to Dismiss submitted by Defendants Wilmington Trust Company and First Marblehead Data Services, Inc. [Docket No. 28]  ("Plaintiff's Original Opposition Memorandum")

Defendants have failed to advance any sound argument for dismissal of this Adversary Proceeding.  The following facts are undisputed:

- The Adversary Complaint filed by the Committee on January 30, 2009 (the "Original Complaint") objected to and sought to avoid the Trusts' security interests.  It clearly identified and sought relief against each Trust.

- The Committee filed the Original Complaint before the expiration of the deadline for objections set forth in the Court's June 23, 2008 Trusts' Order ("Trusts' Order").  [Docket No. 361]

- The Trusts received notice of the Original Complaint when it was filed and, at all relevant times, were aware that the Committee objected to the security interests at issue in this Adversary Proceeding.

- In the Original Complaint, the Committee sought to sue the Trusts by naming the owner-trustee of each Trust in its representative capacity. Both the case caption and the body of the complaint identified each Trust by name. The Committee has filed an Amended Complaint clarifying that each Trust, as already identified in the Original Complaint, is a separate party defendant.

The relief defendants seek – dismissal with prejudice of all of the plaintiff's claims – would be a grossly inequitable and bizarre result given these undisputed facts. Such a result would undermine the liberal rules concerning notice pleading and relation back of amendments set forth in the Federal Rules of Civil Procedure and made applicable to this Adversary Proceeding by Federal Rules of Bankruptcy Procedure 7008 and 7019. Dismissal of the Committee's claims also would be at odds with the purpose and intent of the Trusts' Order, which was to set a deadline by which the Committee would, by a filing made in this Court, put the Trusts on notice of any objections to the Trusts' security interests. There is no dispute here that the Trusts were on notice of the Committee's objections to their liens before the expiration of the applicable Trusts Oder deadlines.

The arguments raised by Defendants in their Reply Memorandum fare no better than the arguments raised in their original motion to dismiss [Docket No. 14] (the "Original Motion to Dismiss"). Defendants' contention that the validity of the Trusts' liens has now been established as "law of the case" pursuant to the Trusts' Order is flat wrong. In fact, pursuant to the Trusts' Order, the validity of the Trusts' liens is *subject to* the objections the Committee has raised in this proceeding. Further, Defendants' fail to cite *any* law supporting their contention that the Original Complaint did not properly name the Trusts for purposes of Fed. R. Civ. P. 8. The case law on this issue supports the Committee, not the Defendants. In any event, the Amended Complaint clarifies that the Trusts are defendants in this Adversary. As set forth below, each of the requirements for relation back under Fed. R. Civ. P. 15(c) has been met.

ID # 588173v02/16357-2/ 06.18.2009

3

Finally, there is no basis for this Court to reconsider its previous rulings that the

Committee has derivative standing to bring the claims set forth in the Amended Complaint.

## II.    ARGUMENT

**A.    The Defendants Have Not Established the Validity or Enforceability of Their Security Interest Because the Committee Timely Objected to The Trusts' Security Interests in Accordance with the Trusts' Order.**

In the Reply Memorandum, Defendants argue that the Trusts Order establishes – as law

of the case – that each Trust "has a valid, enforceable, perfected security interest in its respective

collateral." Reply Memorandum at p. 7. Defendants are wrong.

The doctrine of law of the case applies only when "a court decides upon a rule of law."

Naser Jewelers, Inc. v. City of Concord, N.H., 538 F.3d 17, 20 (1st Cir. 2008). Here, the Court

has made no ruling that the Trusts' liens are valid, enforceable or perfected. The Trusts Order

provides that "each Trust has a valid, enforceable, perfected security interest in its respective

collateral; provided however that the Committee or any other person or entity shall have the right

to object to, or contest in any manner or raise any defenses to, the validity, perfection, priority or

enforceability of the Trusts security interest in the collateral, … in a proceeding initiated in this

Court (or other court then having jurisdiction over this case). Trusts Order,[1] pp. 1-2. The

deadline for objecting to the Trusts' security interests at issue in this proceeding was February 2,

2009.

The Committee *did* "initiate" a proceeding in the Court before February 2, 2009 in which

it objected to and contested the Trusts' security interest. In the Original Complaint filed on

January 30, 2009, the Committee alleged that "the Trusts do not have security interests in any of

the defaulted loans owned by TERI on or after the Petition Date." Original Complaint, prayer

---

[1] A copy of the Trusts Order is attached as Exhibit 2 to the Affidavit of Dennis Jenkins ("Jenkins Aff") which was filed with the Defendants' Original Motion to Dismiss.

(1).  The Original Complaint further sought avoidance of "any security interest asserted by the Trusts against [certain] defaulted loans and/or Recoveries …." Original Complaint, prayer (2). There can be no question that the filing of the Original Complaint met the express terms of the Trusts Order and put the Trusts on notice of the Committee's objections to their security interests.  Accordingly, the validity of the Trusts' liens are subject to those objections.  There is no basis for any argument that the validity of the Trusts' liens has been established as law of the case.

Defendants' contention that plaintiffs failed to adequately name the Trusts in the Original Complaint, even if correct, would not establish a violation of the Trusts Order deadline.  As explained above (and in Plaintiffs' Original Memorandum), the Trusts Order does not require that objections to the Trusts' security interests be presented in any particular form.  Moreover, in the Reply Memorandum, Defendants still fail to cite *any* controlling law supporting their contention that claims against a Delaware statutory business trust *must* be brought against the Trust rather than against the owner-trustee as the Trusts' representative.  There is no such law.[2]

In their Original Brief, defendants relied upon a Florida District Court of Appeals decision in which the Court held, under Florida law, that a common law business trust was the real party in interest in an action to recover on a promissory note given by the trust.  See Defendant's Original Brief at p. 23.  In response, the Committee pointed out that Florida law is in the minority on this issue.  See Plaintiff's Original Memorandum at p. 10-11.  The majority

_____

[2]  As discussed in Plaintiff's Original Brief, the Delaware Code provision upon which Defendants rely merely provides that a statutory trust "may sue and be sued."  See Del. C. §3804(a) (emphasis added).  This code provision is intended to broaden the rights of common law trusts.  It does not purport to *eliminate* the common law right of a trustee of a trust to bring suit on behalf of the trust or to be named as a defendant in a representative capacity.  See Nakahara v. The NS 1991 American Trust, 739 A.2d 770, 781, 783 (Del. Ch. 1998) (Delaware Business Trust Act must be construed "broadly" and "flexibly"; legislature's failure to include an "advancement" provision in the Act, does not reflect legislative hostility toward advancement, but resulted from "an understanding that the common law right … to advance litigation expenses to fiduciaries would continue undisturbed under the Act).

rule *permits* trustees of business trusts to sue or be sued on behalf of the trust. Id.; see Corcoran v. Brody, 347 So.2d 689, 689-90 (Fla. Dist. Ct. App. 1977).[3] Having been caught relying on a minority position, in their Reply, defendants now argue that *all* cases concerning common law business trusts "are inapposite." Defendants' Reply Memorandum at p. 5. The Delaware Business Trust Act, however, expressly describes a Delaware "statutory trust" as including "a trust of the type known at common law as a 'business trust,' or 'Massachusetts Trust.'" Del. Code §3801(g)(1). Accordingly, the majority rule permitting trustees of common law business trusts to sue or be sued on behalf of a trust is not "inapposite," but directly on point and supports the plaintiff's position.

Nakahara v. The NS 1991 American Trust, 739 A.2d 770 (Del. Ch. 1998) cited by Defendants in their Reply, also supports the Committee's position. In Nakahara, plaintiffs (trustees of a Delaware statutory trust) sought indemnification from the trust for legal expenses incurred in defending litigation in New York concerning the Empire State Building. Nakahara, supra, 739 A.2d at 785-786. In order to determine whether the trustees were entitled to indemnification, the court had to decide whether the New York lawsuits had been brought against the plaintiffs personally or "in their capacity as trustees." Id. at 785. The Delaware Chancery Court noted that the New York litigation "alleges wrongdoing with respect to the Trusts' subsequent transfer of its interest in the Empire State Building" to another party. Id. at 786. (emphasis added). The court held that the plaintiffs had been sued in New York in their capacity as trustees for wrongdoing committed by the trust itself. Id. Under these circumstances, the plaintiff/trustees were entitled to indemnification. Id. The Delaware

---

[3] Defendants also seek to distinguish Brody on the grounds that it did not involve a suit against a trust, but rather a suit *brought* by trustees of a trust. This is a distinction without a difference. If the general rule permits a trustee to bring a lawsuit on behalf of a trust, logic dictates that the same rule would permit a suit against the trustee of such a trust.

Chancery Court, therefore, implicitly acknowledged that a Delaware statutory trust can be sued

through its representative trustees which is what occurred in the underlying New York litigation.

Simply put, neither the Trusts Order nor the relevant case law supports Defendants'

contention that their liens must be deemed valid, perfected or enforceable.  That issue should be

decided in this proceeding on the merits.

**B.    The Amended Complaint Relates Back to the Date of the Original Complaint.**

Even if the Original Complaint, somehow,  did not properly name the Trusts, the

Amended Complaint clarifies that the Trusts are party defendants, relates back to the date of the

Original Complaint and eliminates the Defendants' timeliness objections.

**1.    The Relation Back Provisions of Fed. R. Civ. P. 15 Apply Here.**

Defendants argue that the relation back provisions of Fed. R. Civ. P. 15(c) are

"inapplicable and limited to statute of limitations."  Reply Memorandum at p. 9.  Defendants cite

no law to support this proposition.  The text of Rule 15(c) offers no support for Defendants'

argument.  It provides, simply, that an amendment to a pleading "relates back to the date of the

original pleading" when certain conditions are met.  Id.  The Rule does not state or suggest that

its application is limited to deadlines that are incorporated into a statute.

In fact, courts have not limited Rule 15(c)'s application to statutory deadlines.  For

example, courts have applied the relation back provisions of Rule 15(c)(1) in determining

whether to permit a party to file an amendment to a bankruptcy proof of claim after a *court-*

*ordered* bar date has passed.  See In re Enron Corp., 298 B.R. 513, 520-522 (Bankr. S.D.N.Y.

2003); Enjet, Inc. v. Maritime Challenge Corp. (In re Enjet, Inc.), 220 B.R. 312, 315 (E.D. La.

1998) ("Numerous courts have applied Rule 7015 and Rule 15(c) explicitly or by analogy in

non-adversary [bankruptcy] proceedings"); In re Brown, 159 B.R. 710, 714 (Bankr. D.N.J. 1993)

(Rule 15's "standards for allowing amendments to pleadings and adversary proceedings ... also

apply to amendments to a proof of claim").[4]

In any event, defendants here argue that the Trust Order operates as a statute of limitation

to bar all of the plaintiff's claims against the Trust. There is no conceivable reason why the

relation back provisions of Rule 15(c) should not apply in such a circumstance.

Of course, courts do not apply the relation back provisions of Rule 15(c) when there is an

express Rule 16 Scheduling Order setting a deadline for filing amendments to pleadings.[5] See

e.g. Trans-Spec Truck Service, Inc. v. Caterpillar, Inc., 524 F.3d 315, 327 (1st Cir. 2008);

O'Connell v. Hyatt Hotels of Puerto Rico, 357 F.3d 152, 154-155 (1st Cir. 2004). These cases,

relied upon by Defendants, have no application here, however, because there is no Rule 16 order

setting a deadline for any amendments to objections filed pursuant to the Trusts Order. The

Trust Order merely sets the date for "initiating" an objection; it does not preclude or set any bar

date for an amendment to such an objection.

### 2.     The Relation Back Provisions of Rule 15 Apply Even if the Amended Complaint Adds Parties.

Defendants' argue that the relation back provisions of Rule 15(c)(1)(C) are not applicable

where a plaintiff is joining additional parties, rather than changing or substituting one party for

another. This argument also fails.

First, the Amended Complaint does not, in fact, add new parties. The Original Complaint

listed and sought relief against each of the Trusts that are also named in the Amended Complaint.

---

[4] Liddle v. Drexel Burnham Lambert Group, Inc., 159 B.R. 420, 425 (S.D.N.Y. 1993) ("[s]everal courts have held that the analysis for amendment of claims in bankruptcy is identical to the analysis required by Rule 15"); In re McLean Industries, Inc., 121 B.R. 704, 710 (Bankr. S.D.N.Y. 1990) ("The test under Rule 15 is basically is the same as that developed in the case law for amending claims in bankruptcy....").

[5] In such a circumstance, the Courts apply the excusable neglect standard of Rule 9. As described in the Plaintiff's Original Memorandum, the Committee meets this standard as well.

As discussed in Plaintiff's Original Memorandum, the Original Complaint adequately put each

Trust on notice of the Committee's claims for purposes of Fed R. Civ. P. 8.  (See Plaintiff's

Original Memorandum at p. 8-11).  The Amended Complaint merely alters the way in which the

Trusts are named.

Moreover, the overwhelming majority of courts (including the courts of the First Circuit)

have rejected the contention that the relation back provisions of Rule 15 apply only in the case of

a substitution of parties.  "Although Rule 15(c)(3) refers to changing a party and does not

explicitly state adding a party, courts have liberally construed the word "changes" (or "changing"

under prior version of the rule) to include adding a new party."  In re Enron Corp., 298 B.R. 513,

522 (S.D.N.Y. 2003); see Serrano v. Gonzalez, 909 F.2d 8, 10-12 (1st Cir. 1990); Global

Crossing Estate Representative v. Winnick, No. 04 Civ. 2588 (GEL), 2006 WL 2212776

(S.D.N.Y. August 3, 2006) at *7-8 (Rule 15(c) relation back provisions applies to amendment

naming subsidiary corporations as additional defendants where the original complaint provided

notice that the conduct of the subsidiaries was in question); Shariff v. Coombe, No. 96 Civ. 3001

(BSJ), 2002 WL 1392164, at *4 (S.D.N.Y. June 26, 2002) ("Rule 15(c) stands as a remedial

device for adding or substituting a party….") quoting Morin v. Trupin, 778 F. Supp. 711, 735

(S.D.N.Y. 1991).[6]

---

[6] See also Cimino v. Glaze, 228 F.R.D. 169, 172 (W.D.N.Y. 2005); In re Integrated Resources Real Estate Ltd.
P'Ship Sec. Litig., 815 F. Supp. 620, 644 (S.D.N.Y. 1993) ("mistake" prerequisite of Rule 15(c) should not be
limited to cases of misnomer, but should be applied with an eye toward whether "the new party's awareness that
failure to join it was error rather than deliberate strategy."); Koal Indus. Corp. v. Asland, S.A., 808 F. Supp. 1143,
1157 (S.D.N.Y. 1992) ("Rule 15(c) is not limited to [literal] mistakes … [i]t has been given a much broader reading
[than misnomer]."); Sounds Express Int'l Ltd. v. American Themes and Tapes, Inc., 101 F.R.D. 694, 697 (S.D.N.Y.
1984) (same); Bass v. World Wrestling Fed'n Entm't, Inc., 129 F. Supp.2d 491, 507 (C.D.N.Y. 2001) ("Although
not explicitly stated in Rule 15(c)(3), courts have expanded its purview to cover adding, in addition to merely
changing, defendants."); Lundy v. Adamar of N.J., Inc., 34 F.3d 1173, 1192 (3d Cir. 1994) ("adding a party is
essentially no different from changing a party … [T]his circuit has interpreted Rule 15(c) to allow for the addition
of a new party.") (emphasis in the original); 3 James Wm. Moore, Moores Federal Practice, ¶15.19[3][d] (3d ed. 2005)
("a court should allow an amendment to relate back to add a defendant that was not named at the outset, that was
added later when plaintiff realized that a defendant should have been named …").

In <u>Serrano v. Gonzalez</u>, 909 F.2d 8 (1st Cir. 1990), for example, a plaintiff filed an

amended complaint naming an additional party defendant while retaining the other defendants

named in the original complaint. <u>Id.</u> at 10. The First Circuit held that the relation back

provisions of Rule 15(c) applied to this newly added defendant:

> [I]n a Rule 15(c) analysis the linchpin is notice, and notice within
> the limitations period. The courts have developed an "identity of
> interest" concept as a judicial gloss on Rule 15(c). Under this
> concept an amendment to *add* a party as a defendant will relate
> back to the time of the filing of the original complaint if the named
> defendant and the party that the plaintiff actually intended to sue
> have an "identity of interest" ... [and] the other requirements of
> Rule 15(c) have been satisfied. In this circuit, the parties have an
> "identity of interest" when the original and added parties are so
> closely related in business or other activities that it is fair to
> presume the added parties learned of the institution of the action
> shortly after it was commenced.

<u>Id.</u> at 12 (emphasis added) (internal quotations and citations omitted); <u>see also</u> <u>Hernandez</u>

<u>Gimenez v. Calero Toledo</u>, 604 F.2d 99, 102-03 (1st Cir. 1979) (adopting identity of interest

test).

In this case, as in <u>Serrano</u>, the Trusts and the owner-trustee share an identity of interest

and the Trusts learned of the institution of the Committee's Adversary Proceeding shortly after it

was commenced. Accordingly, the relation back provisions should apply to the Amended

Complaint.[7]

---

[7] Defendant's reliance upon <u>Tabb v. Journey Freight Internations</u>, 584 F. Supp.2d 334, 342 (D. Mass. 2008) is misplaced. In that case, the court (Ponser, J.) ruled that an amended complaint naming an additional defendant (unrelated and unaffiliated with the original defendant) would not relate back under Rule 15(c). Defendants cite, not to district court Judge Ponser's written decision, but to a portion of a magistrate's report and recommendation in which the magistrate opined that Rule 15(c) did not apply to amendments that add a new defendant. <u>Id.</u> at 342. That portion of the magistrate's recommendation, however, was not adopted by Judge Ponser as a basis for his decision denying the amendment. Instead, Judge Ponser found that the proposed amendment would not relate back because the new defendant (i) had no notice of the action within 120 days of its original filing, and (ii) had no knowledge that, but for mistake concerning the identity of the proper party, the action would have been brought against it. <u>Id.</u> at 337. Since neither of these two factors is present here, the Court's actual holding in <u>Tabb</u> provides no support for defendants' position.

### 3.    Plaintiff Satisfies the "Mistake" Condition of Rule 15(c)(1).

Defendants also contend that the Committee has not satisfied the third condition of the
three-part test for relation back under Rule 15(c) i.e., that the new party "knew or should have
known that the action would have been brought against it, but for a mistake concerning the
proper party's identity." Fed. R. Civ. P. 15(c)(1)(C). Defendants argue that there was no
mistake in identity because plaintiff knew of the existence of the Trusts at the time the Original
Complaint was filed. This argument also misses the mark.

"The 'mistake' condition does not isolate a specific type or form of error in identifying
parties, but rather is concerned fundamentally with the new party's awareness that failure to join
it was error rather than a deliberate strategy." In re Integrated Resources Real Estate Ltd. P'ship
Sec. Litig., 815 F. Supp. 620, 644 (S.D.N.Y. 1993), quoting, Advanced Power Sys., Inc. v. High-
Tech Sys., Inc., 801 F. Supp. 1450, 157 (E.D. PA 1992).  To establish mistake under Rule
15(c)(3), "a plaintiff must show either factual mistake (for example, he or she misnamed a party
*or misidentified the party it wished to sue*) or legal mistake (for example, he or she
misunderstood the legal requirements of his or her cause of action)."  In re Enron, supra, 298
B.R. at 524 citing, In re Sterling Foster Co., 222 F. Supp.2d 216, 261 (E.D.N.Y. 2002) (emphasis
added).

The purpose of the "mistake" requirement of Rule 15(c) "is to avoid the harsh
consequences of a mistake that is neither prejudicial nor a surprise to the misnamed party."
Rendall-Speranza v. Nassim, 107 F.3d 913, 918 (D.C. Cir. 1997).  Ultimately, "the distinction is
between the plaintiffs' strategy or lack of due diligence and their honest error."  In re Integrated
Resources, supra, 815 F. Supp. at 644; see also Leonard v. Parry, 219 F.3d 25, 29 (1st Cir. 2000)
(Rule 15(c)(3) "does not distinguish among types of mistakes concerning identity…[it] requires

courts to ponder whether, in a counterfactual error-free world, the action would have been brought against the proper party….").

In this case, the Committee did not initially seek to impose liability on some other party (for strategic reasons) and then, later, change its mind. Instead, it is obvious from the prayer for relief in the Original Compliant that the Committee always sought to bring an action against the Trusts. The Committee initially did so by naming the owner-trustee as each Trust's representative. The mistake in this case, if there was one, concerns the technical pleading mechanism by which a Delaware statutory trust should be named in a Complaint. There is no "prejudice or surprise" to the Trusts. At all times, the Trusts knew that the plaintiffs sought to impose liability against them. The Trusts (and their counsel) received notice of the Original Complaint challenging their security interests shortly after it was filed.[8] The alleged pleading mistake at issue here is precisely the kind of mistake that the relation back provisions of Rule 15(c) were designed to address.[9] See Fed. R. Civ. P. 15 (Complaint "may be amended at anytime to correct a formal defect such as misnomer or misidentification."); Morel v. DaimlerChryler A.G., 565 F.3d 20, 27 (1st Cir. 2009) (mistake within meaning of Rule 15(c) found where it is obvious from the face of the original complaint that the plaintiffs intended to sue the party sought to be added by amendment.).

---

[8] Counsel for the Trust Administrator (Dennis Jenkins) received immediate ECF notice of the Original Complaint. Mr. Jenkins also has entered an appearance on behalf of the Trusts. In addition, the Trusts were properly served with the Original Complaint shortly after it was filed pursuant to Fed. R. Civ. P. 4. Affidavit of Nicholas J. Nesgos [Docket No. 30], ("Nesgos Aff"), Exh. C and D.

[9] Defendants rely upon cases in which a plaintiff knows the identity of a potential defendant, but initially chooses, as part of a deliberate litigation strategy, to sue some other party. See e.g. Rendall-Speraza v. Nassim, 107 F.3d 913, 917-18 (D.C. Cir. 1997). These cases have no application here, because the Committee did initially seek to impose liability upon the Trusts. Plaintiff merely chose to sue the Trusts through its owner-trustee. Defendants' reliance upon Leonard and Morel, supra, also is misplaced. In both of those cases, the Court allowed relation back. Neither case concerns an alleged mistake in pleading.

C.    **The Court Should Reject Defendants' Standing Objections.**

For the reasons discussed in Section III, F of plaintiff's Original Memorandum, all of the

Defendants' standing arguments should be rejected because this Court already has expressly

ruled that the Committee has derivative standing to challenge the Trusts' liens and has overruled

the same standing objections raised by the Defendants in their Reply Memorandum.[10]

D.    **Both Wilmington Trust Company and FMDS Are Necessary Parties
and Should Not Be Dismissed.**

For the reasons explained in Plaintiff's Original Memorandum, both Wilmington and

FMDS are necessary parties to this action and should remain as Defendants.  The Amended

Complaint expressly alleges that FMDS has power of attorney for the Trusts and was authorized

to direct the actions of U.S. Bank that are the subject of this Complaint.  See Amended

Complaint, ¶8.  Since FMDS has directed (and continues to direct) the actions of the Trusts that

are the subject of this Complaint, FMDS has an interest in the Courts adjudication of the

Committee's objections and must be bound by any judgment entered.

Similarly, Wilmington, as owner-trustee, has authority to administer the Trusts for the

beneficial owners.  See Trust Agreement, ¶8.03 (Jenkins Aff., Exh. 19).  Wilmington also must

be bound by any order or judgment of this Court to insure that complete relief is afforded to the

estate.  Further, as set forth in Section A above and in Plaintiffs' Original Memorandum, the law

permits the naming of an owner-trustee (in its representative capacity) in an action against a

business trust.  See The Shaw Group, Inc. v. The SWE&C Liquidating Trust (In re: Stone &

Webster, Inc.), Adversary No. 08-51839, 2009 WL 426118 (Bankr. D. Del. Feb. 18, 2009) at *5

---

[10] See Order, dated November 18, 2008 [docket no. 616] ("Standing Order") and November 18, 2008 Hr'g Tr. 22:
22-25, attached as Exhibit B to the Nesgos Aff.

("It is clear that a party seeking to impose liability on a trust may name both the trust and the trustee in her or his representative capacity.")

Sections 3803(b) and (c) of the Delaware Code do not preclude FMDS or Wilmington from being named as necessary parties in this action. These code provisions merely provide that trustees and managers of statutory trusts cannot be "personally liable" for acts, omissions or obligations of the Trust itself. Here, the plaintiff does not seek to impose "personal" liability upon FMDS or Wilmington; instead, these defendants have been named solely in their capacity as representatives of the Trusts to ensure that the Committee obtains complete relief.

**E.    Conclusion**

For each of the reasons set forth above and in Plaintiffs' Original Memorandum, the Committee requests that the Court deny Defendants' Motion to Dismiss.

OFFICIAL COMMITTEE OF UNSECURED CREDITORS, on behalf of itself and derivatively, on behalf of the Debtor and the bankruptcy estate,

By its conflicts counsel,

/s/ Laura Otenti
David J. Reier (BBO No. 546202)
Nicholas J. Nesgos (BBO No. 553177)
Laura Otenti (BBO No. 660301)
POSTERNAK BLANKSTEIN & LUND LLP
Prudential Tower
800 Boylston Street, 33rd Floor
Boston, Massachusetts 02199
Telephone: (617) 973-6100
Facsimile: (617) 367-2315
Email: lotenti@pbl.com

Dated:   June 18, 2009

## CERTIFICATE OF SERVICE

IT IS CERTIFIED that the foregoing document was filed this 18th day of June 2009 through the ECF filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing, and by separate email to counsel to Wilmington Trust Company at shandler@rlf.com.

/s/ Laura Otenti_____