# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT

**BAP NO. MB 09-057**

**Bankruptcy Case No. 08-12540-HJB**
**Adversary Proceeding No. 09-01040-HJB**

**THE EDUCATION RESOURCES INSTITUTE, INC.,**
Debtor.

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF THE EDUCATION RESOURCES INSTITUTE, INC.,**
Plaintiff-Appellee,

v.

**WILMINGTON TRUST COMPANY, and
MARBLEHEAD DATA SERVICES, INC.,**
Defendant-Appellant.

**Haines, Vaughn, and Kornreich, U.S. Bankruptcy Appellate Panel Judges.**

### JUDGMENT DISMISSING INTERLOCUTORY APPEAL

Before the Panel is the Joint Motion for Leave to Appeal (the "joint motion") filed by the defendants, Wilmington Trust Company; U.S. Bank National Association, as custodian; U.S. Bank National Association, as indenture trustee; First Marblehead Data Services, Inc.; and the Trusts[1] (collectively, the "Defendants"), in the subject adversary proceeding. The Defendants

---

[1] The National Collegiate Master Student Loan Trust I (a/k/a The National Collegiate Trust 2001 A/R 1, 2, 3); The National Collegiate Trust 2001-CP1; The National Collegiate Trust 2002-CP1; The National Collegiate Student Loan Trust 2003-1; The National Collegiate Student Loan Trust 2004-1; The National Collegiate Student Loan Trust 2004-2; The National Collegiate Student Loan Trust 2005-1; The National Collegiate Student Loan Trust 2005-2; The National Collegiate Student Loan Trust 2005-3;

seek leave to appeal from four interlocutory orders of the bankruptcy court denying their respective motions to dismiss the First Amended Adversary Complaint filed by the Official Committee of Unsecured Creditors of The Education Resources Institute, Inc. (the "Committee"). The joint motion supports four separate notices of appeal filed in connection with four separate orders entered by the bankruptcy court.

The Defendants seek to challenge the Committee's standing to prosecute the adversary proceeding. Pursuant to its amended complaint, the Committee, for itself and purportedly on behalf of the debtor, The Education Resources Institute, Inc. (the "Debtor" or "TERI"), seeks to invalidate certain rights of the Trusts in, among other things, certain student loans having an aggregate outstanding principal balance of more than $550 million. The Defendants claim that in denying their motions to dismiss, the bankruptcy court erroneously concluded that the Committee possessed both direct and derivative standing to pursue its claims against the Defendants.

For the reasons set forth below, the joint motion is **DENIED**, and this appeal is **DISMISSED** for lack of jurisdiction.

## FACTUAL BACKGROUND

The Debtor is a non-profit corporation that, prior to the bankruptcy filing, offered college access programs targeting low-income students and those in the first generation of their families to attend college. The Debtor acted as a processor and guarantor of private student loans made by one or more lenders. Certain batches of the loans were securitized, and the lenders' rights

---

The National Collegiate Student Loan Trust 2006-1; The National Collegiate Student Loan Trust 2006-2; The National Collegiate Student Loan Trust 2006-3; The National Collegiate Student Loan Trust 2006-4; The National Collegiate Student Loan Trust 2007-1; The National Collegiate Student Loan Trust 2007-2; The National Collegiate Student Loan Trust 2007-3; and The National Collegiate Student Loan Trust 2007-4 (referred to collectively as the "Trusts").

2

under the loans (and related guaranty and other agreements) were transferred to the Trusts. One of the defendants, Wilmington Trust Company, serves as the statutory trustee of the Trusts, and another defendant, First Marblehead Data Services, Inc. ("FMDS"), provides administrative services to the Trusts. According to the Defendants, to secure its obligations under the guaranty agreements and various security agreements, the Debtor granted each Trust a security interest in certain collateral. To finance their purchase of the student loans, the Trusts, pursuant to certain indentures, issued student loan backed securities. Defendant U.S. Bank National Association ("U.S. Bank") is the indenture trustee under each of the indentures.

### A.    The Trusts Order

The Debtor filed a chapter 11 petition on April 7, 2008.[2] On June 5, 2008, the Debtor filed a Motion for Order Pursuant to Sections 105, 352 and 363 of the Bankruptcy Code Authorizing the Debtor to Honor Certain of its Guaranty Obligations and Purchase Defaulted Loans Using Certain Pledged Accounts Established for the Benefit of the Trusts ("Trusts Motion"). The Trusts Motion identified seventeen such Trusts, each of which had been established to hold and securitize pools of student loans. Upon securitization, pledged accounts were created from pre-existing so-called "pooled accounts" or other accounts previously pledged for the benefit of the original lenders. The pledged accounts were intended to secure the Debtor's guaranty obligations with respect to the securitized loans.

First Marblehead Corporation ("FMC") and certain of its affiliates, including FMDS, were responsible for many aspects of the securitizations. They administered and serviced certain

---

[2] Unless otherwise noted, all references to chapters, statutory sections or to the "Bankruptcy Code" are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, et seq.

3

aspects of the Trusts' assets and operations. The Debtor moved for authority to terminate its contracts with FMC and to enter into a transition services agreement with FMC ("FMC Motion"). Pursuant to the FMC Motion, the Debtor sought authority to enter into a transition services agreement with FMC. In connection therewith, the Debtor entered an agreement with FMC to terminate their prior contractual relationship and to transition various operations to the Debtor.

Before hearings convened to consider the Trusts Motion and the FMC Motion, and in connection with the Debtor's agreement with FMC, FMC obtained the Debtor's acknowledgment of the validity, priority and perfection of the Trusts' various asserted liens, including the Trusts' interests in the pledged accounts and other collateral. Because the Committee desired an opportunity to review and analyze the voluminous documentation governing the security interests, contractual rights and obligations of the Trusts, it insisted that the acknowledgment be "subject to" the right of the Committee or any other person or entity to object to or contest the Trusts' security interests by specified dates.

On June 20, 2008, the bankruptcy court heard both the Trusts Motion and the FMC Motion. The court entered orders approving both motions on June 23, 2008 ("Trusts Order" and "FMC Order" respectively). The Committee asserts that the language of the Trusts Order was heavily negotiated and ultimately agreed upon by the Debtor, the Committee, FMDS, as administrator for the Trusts, and U.S. Bank, as indenture trustee to the Trusts. The Trusts Order provides, among other things, as follows:

> each Trust has a valid, enforceable, perfected security interest in its
> respective Collateral; provided however that the Committee or any other
> person or entity shall have the right to object to, or contest in any manner

4

> or raise any defenses to, the validity, perfection, priority or enforceability of the Trusts' security interests in the Collateral, including without limitation, the Recoveries (as defined in the applicable Deposit and Security Agreements) and Pledged Accounts, including, without limitation, the application of section 552 of the Bankruptcy Code to Recoveries, only in a proceeding initiated in this Court (or other court then having jurisdiction over the case) . . .

Trusts Order at 1-2.

The Trusts Order set forth three deadlines for objection, depending on the nature of the collateral at issue. Trusts Order at 2. With the assent of the Debtor, FMC, and U.S. Bank, as indenture trustee, the Committee subsequently moved to extend the deadlines set forth in the Trusts Order. As a result of the resulting extensions, the deadline for the Committee to object to the Trusts' security interests in the post-petition transfers was extended to February 2, 2009.

**B.    The Stipulation and Order Regarding Derivative Standing**

Although it asserts that the Trusts Order alone authorized it to commence an adversary proceeding, the Committee, with the Debtor's assent, sought authority to pursue its claims derivatively on behalf of the estate. On October 24, 2008, the Debtor filed a Motion for Order Authorizing Debtor to Enter into Stipulation With Official Committee of Unsecured Creditors Regarding (A) Forbearance by Committee in Filing Objections to Perfection and Enforceability of Certain Security Interests Asserted by Trusts; (B) Derivative Standing of Committee to Commence Adversary Against Trusts; and (C) Approval by Committee in Connection With Any Settlement of Trusts' Asserted Collateral and Claims (the "Derivative Standing Motion"). Paragraph 2 of the Stipulation provided:

> Based upon the rights granted to the Committee pursuant to the Trusts Order, TERI consents to the Committee having derivative standing to commence an adversary proceeding against the Trusts

5

>and related parties on behalf of TERI and the bankruptcy estate to
>determine the enforceability, scope and perfection of the security
>interest of the Trusts in any and all property of TERI and the
>bankruptcy estate, including, without limitation, asserting all of the
>estate's avoidance and related powers in connection with the
>Trusts' alleged security interest and seeking declaratory relief as to
>the applicability of Section 552 of the Bankruptcy Code in respect
>of the Trusts' purported lien claims, pursuant to the doctrines
>articulated in *Official Committee of Unsecured Creditors of
>Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery (In re
>Cybergenics Corp.)*, 330 F.3d 548 (3d Cir. 2003); *Commodore
>Int'l Ltd. v. Gould*, 262 F.3d 96, 100 (2d Cir. 2001); *In re Together
>Development Corp.*, 262 B.R. 586 (Bankr. D. Mass. 2001); and
>other similar decisions.

Stipulation at ¶ 2. The Defendants claim that in consideration for the Debtor's consent to derivative standing, the Committee agreed to "forbear from filing its objections and/or initiating an adversary proceeding against the Trusts through and including November 21, 2008.

FMC and FMDS, as administrator for the Trusts, filed a limited objection to the Derivative Standing Motion, arguing that the bankruptcy court could not, or should not, grant derivative standing to the Committee. U.S. Bank, as indenture trustee, joined in their objection. The parties appeared at non-evidentiary hearings on October 30, 2008, and November 18, 2008, to argue the standing issue. The bankruptcy court ultimately overruled the objections and granted the Derivative Standing Motion. As directed by the bankruptcy court, the Committee submitted a proposed form of order approving the Stipulation. The Committee claims it circulated the form of order to FMDS, U.S. Bank and the Trusts before it was filed with the court and that no party objected to its content. The bankruptcy court entered the order (the "Derivative Standing Order") overruling the objections and granting the Derivative Standing Motion pursuant to the doctrines articulated "in <u>Official Committee of Unsecured Creditors of Cybergenics Corp. ex rel.</u>

6

Cybergenics Corp. v. Chinery (In re Cybergenics Corp.), 330 F.3d 548 (3d Cir. 2003); Commodore Int'l Ltd. v. Gould, 262 F.3d 96, 100 (2d Cir. 2001); and In re Together Development Corp., 262 B.R. 586 (Bankr. D. Mass. 2001), and similar decisions."

### C.    The Adversary Proceeding

On January 30, 2009, the Committee filed an adversary complaint contesting the Trusts' security interests in property of the estate. The Defendants moved to dismiss, arguing, inter alia, that the Committee lacked direct standing and that it did not possess derivative standing because: (1) the Debtor no longer had standing at the time it attempted to bestow derivative standing; (2) the Bankruptcy Code does not empower the Debtor to bestow derivative standing on the Committee; and (3) the bankruptcy court granted derivative standing based on a misapplication of pertinent principles. The Committee opposed the motion and filed an amended complaint.

The bankruptcy court denied the motions to dismiss, ruling from the bench:

> And then finally there's the issue of derivative standing. I rule that the Committee's standing to bring the complaint is the law of the case. It was set forth in the [Trusts' Order], and brought forward by implication in each extension. If it were not the law of the case, certainly the arguments made in the *Commodore* - the standards raised in the *Commodore* decision would - would apply.

Transcript of September 29, 2009 Hearing, at 73. Four orders denying the Defendants' respective motions (the "Orders") entered, and the Defendants appealed.

## DISCUSSION

### A.    Interlocutory Orders

We have jurisdiction to hear appeals from "final judgments, orders, and decrees" pursuant to 28 U.S.C. § 158(a)(1) or, "with leave of the court, from interlocutory orders and decrees"

7

pursuant to 28 U.S.C. § 158(a)(3). Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.), 218 B.R. 643, 645 (B.A.P. 1st Cir. 1998). "A decision is final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" Id. at 646. An interlocutory order "'only decides some intervening matter pertaining to the cause, and which requires further steps to be taken in order to enable the court to adjudicate the cause on the merits.'" Id. (quoting In re American Colonial Broad. Corp., 758 F.2d 794, 801 (1st Cir. 1985)). A bankruptcy court's denial of a motion to dismiss an adversary complaint is not a final order because it does not conclusively or effectively determine the outcome of the litigation. See Stubbe v. Banco Central Corp. (In re Empresas Noroeste, Inc.), 806 F.2d 315, 316-17 (1st Cir. 1986) (order denying motion to dismiss trustee's suit to set aside mortgage is non-appealable interlocutory order).

### B. Motion for Leave to Appeal

We have discretionary authority to grant leave to appeal from interlocutory orders under one of three precepts: (1) the collateral order doctrine;[3] (2) application of the criteria governing

---

[3] "There exists 'a small class' of decisions, termed 'collateral orders,' 'which finally determine claims of right separable from and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.'" Bank of New England, 218 B.R. at 649 (other citations omitted).

28 U.S.C. § 158(a)(3) review of interlocutory orders;[4] or, (3) the Forgay-Conrad doctrine.[5] See 28 U.S.C. § 158(a)(3). The Defendants assert that 28 U.S.C. § 158(a)(3), as informed by 28 U.S.C. § 1292(b), provides us authority to hear the matters they present.

To ascertain whether we should exercise discretionary authority under 28 U.S.C. § 158(a)(3) to grant leave to appeal, we consider whether (1) the "order involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) whether "an immediate appeal from the order may materially advance the ultimate termination of the litigation." Bank of New England, 218 B.R. at 652.

**1. Controlling issue of law**

The Defendants argue that the Committee's standing presents a controlling issue of law because, without standing, the Committee cannot prosecute the adversary proceeding. "A question of law controls the outcome of the underlying case if no alternate theory exists on which the party could succeed." Watson v. Boyajian (In re Watson), 309 B.R. 652, 659 (B.A.P. 1st Cir. 2004). "Standing is generally a controlling issue of law in that if a plaintiff is found to lack standing, the action will be dismissed." Pacamor Bearings, Inc. v. Mineba Co., Ltd., 892 F.

---

[4] "Section 158 provides no express criteria to guide our discretion, but most courts utilize the same standards as govern the propriety of district courts' certification of interlocutory appeals to the circuit courts under § 1292(b)." Bank of New England, 218 B.R. at 652 (other citations omitted). "Section 1292(b) permits appellate review of 'certain interlocutory orders, decrees and judgments ... to allow appeals from orders other than final judgments when they have a final and irreparable effect on the rights of the parties.'" Id. at 652 n.17. "To ascertain whether we should exercise our discretion ... we will consider whether (1) the 'order involves a controlling question of law' (2) 'as to which there is substantial ground for difference of opinion,' and (3) whether 'an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" Id. at 652.

[5] "A third concept, labeled the Forgay-Conrad doctrine, has been employed to bestow appellate jurisdiction over interlocutory orders when 'irreparable injury' to the aggrieved party may attend delaying appellate review until the litigation is over." Bank of New England, 218 B.R. at 649 n.8 (citing American Colonial, 758 F.2d at 803).

9

Supp. 347, 361 (D.N.H. 1995); see also Nickless v. Merrill Lynch, Pierce, Fenner & Smith, Inc. (In re Advanced RISC Corp.), 317 B.R. 455, 456 (D. Mass. 2004) (citing Pacamor). Indeed, standing is a jurisdictional requirement and cannot be waived. Splenlinhauer v. O'Donnell, 261 F.3d 113, 118 (1st Cir. 2001). If, ultimately, we were to conclude that the Committee lacked standing, it could not pursue its claims. Thus, we conclude that the Committee's standing presents a controlling issue of law in these appeals.

### 2. Substantial ground for difference of opinion

The Defendants argue that the issue of the Committee's standing is not settled by controlling case law because the question whether and under what circumstances a creditors' committee can be granted derivative standing to bring claims under §§ 544, 549 and 550 is unresolved, comparing Hartford Underwriters v. Union Planters Bank, N.A., 530 U.S. 1, 6 (2000); and Fox v. Furman, 305 B.R. 912, 915 (B.A.P. 10th Cir. 2004); with Cybergenics, 330 F.3d at 572; and Commodore, 262 F.3d at 100.

In Hartford Underwriters, the U.S. Supreme Court held that § 506(c)[6] of the Bankruptcy Code was exclusively enforceable by a bankruptcy trustee. Hartford Underwriters, an insurance company that provided workers' compensation insurance to the chapter 7 debtor, sought to recover unpaid premiums. Because the estate lacked sufficient unencumbered funds to pay them, it attempted directly to surcharge a secured creditor pursuant to § 506(c). See Hartford

---

[6] Section 506(c) provides:

> *The trustee* may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim . . . .

11 U.S.C. § 506(c) (emphasis added).

10

Underwriters, 530 U.S. at 3-5. The Court refused to allow this, holding that § 506(c) authorized only the trustee to invoke section's surcharge provision. Id. at 6. The Court noted that "[w]here a statute . . . names the parties granted [the] right to invoke its provisions . . . such parties only may act." Id. at 6-7.

The Court carefully noted, however, that it did "not address whether a bankruptcy court can allow other interested parties to act in the trustee's stead in pursuing recovery under § 506(c)." Id. at 13 n.5. Noting the "practice of some courts of allowing creditors . . . a derivative right to bring avoidance actions when the trustee refuses to do so, even though the applicable Code provisions mention only the trustee," the Court explained that this practice "ha[d] no analogous application here, since [Hartford] did not ask the trustee to pursue payment . . . and did not seek permission from the Bankruptcy Court to take such action in the trustee's stead." Id. Thus, the Court made clear that it was rejecting only an "independent right to use § 506(c)." Id. Accordingly, the Hartford Underwriters holding does not control the question whether the Bankruptcy Code allows courts to authorize derivative standing to a creditors' committees for a purpose such as to bring avoidance actions.

After Hartford Underwriters, every court of appeals to address the availability of derivative standing to pursue avoidance claims has permitted creditors' committees to bring such derivative suits if the committee is able to establish certain criteria. See Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc. (In re Trailer Source, Inc.), 555 F.3d 231 (6th Cir. 2009); PW Enters., Inc. v. N.D. Racing Comm'n (In re Racing Servs., Inc.), 540 F.3d 892, 898 & n.7 (8th Cir. 2008) (holding that "derivative standing is available to a creditor to pursue avoidance actions when it shows that a Chapter 7 trustee (or debtor-in-possession in the case of Chapter 11)

11

is 'unable or unwilling' to do so" notwithstanding Hartford Underwriters); Cybergenics, 330 F.3d at 580 (holding that "bankruptcy courts can authorize creditors' committees [in Chapter 11 proceedings] to sue derivatively to avoid fraudulent transfers for the benefit of the estate" notwithstanding Hartford Underwriters); Commodore, 262 F.3d at 100; Fogel v. Zell, 221 F.3d 955, 965-66 (7th Cir. 2000) (approving of derivative standing in dicta). Many courts follow the standards set forth by the U.S. Court of Appeals for the Second Circuit in Commodore, such as the bankruptcy court did in this case.

In Commodore, the Second Circuit noted that although a debtor-in-possession is typically responsible for pursuing actions that are in the best interest of a bankruptcy estate, some courts have held that "a debtor in possession may stipulate to representation by an unsecured creditors' committee 'so long as the bankruptcy court exercises its judicial oversight and verifies that the litigation is indeed necessary and beneficial.'" Commodore, 262 F.3d at 98 (citations omitted). The court set forth the following test to determine whether a committee of unsecured creditors has derivative standing:

> A creditors' committee may acquire standing to pursue the debtor's claims if (1) the committee has the consent of the debtor in possession or trustee, and (2) the court finds that suit by the committee is (a) in the best interest of the bankruptcy estate, and (b) is "necessary and beneficial" to the fair and efficient resolution of the bankruptcy proceedings."

Id. at 100. "This approach permits a reasoned and practicable division of labor between the creditors' committee and the debtor in possession or trustee, while also providing bankruptcy courts with significant authority both to manage the litigation and to check any potential for abuse by the parties." Id.

12

The U.S. Court of Appeals for the First Circuit has not addressed the issue. However, in two reported cases, bankruptcy courts sitting in Massachusetts have permitted an unsecured creditors' committee to pursue claims on behalf of the estate upon the debtor's consent and after court approval. See In re Sunset Hollow Properties, LLC, 359 B.R. 366, 382-83 (Bankr. D. Mass. 2007); Together Development Corp. v. Pappas (In re Together Development Corp.), 262 B.R. 586, 589 (Bankr. D. Mass. 2001). The Defendants contend (without explanation) that there is some conflict with respect to the standards applied for derivative standing in these two cases. In Sunset Hollow, the bankruptcy court applied the Commodore standards where the creditors' committee entered into a stipulation with the debtor to pursue the estate's claims. In Together Development, the bankruptcy court provided an extensive analysis of why Hartford Underwriters does not bar a creditors' committee from acting derivatively to bring fraudulent transfer claims, finding that such actions were authorized by §§ 1103(c)(5) and 1109(b). Although the Together Development court did not expressly adopt the Commodore standards, it neither rejected those standards nor did it set forth any conflicting standard to be applied.

In light of the foregoing, there does not appear to be a substantial ground for difference of opinion on the issue of whether, pursuant to a court-approved stipulation with a chapter 11 debtor, a creditors' committee may bring suits derivatively on behalf of the bankruptcy estate.

### 3. Materially advance the ultimate termination of the litigation

The Defendants argue that an interlocutory appeal will advance the conclusion of this litigation because this adversary proceeding would be dismissed if it were determined that the Committee lacks standing to bring its claims. The Committee argues that although reversal on the standing issue would terminate the Committee's involvement in the litigation, it would not

13

end the adversary proceeding itself as the Debtor could be substituted as a party plaintiff to assert the same claims against the Defendants. The Committee notes that the bankruptcy court has the power to add or substitute the Debtor as a party plaintiff (citing Fed. R. Civ. P. 17 and 21), and that under Fed. R. Civ. P. 17(a), an action should not be dismissed on standing grounds "until a reasonable time has been allowed after objection for . . . substitution of [] the real party in interest; and such . . . substitution shall have the same effect as if the action had been commenced in the name of the real party in interest." See Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 19-22 (2d Cir. 1997). The Defendants have not argued that the Debtor cannot properly be substituted as a party plaintiff. Thus, on this final point we remain unpersuaded. But, at all events, given our conclusion that the controlling issue of law does not, at this juncture, present a substantial ground for difference of opinion, it is beside the point.[7]

## CONCLUSION

Because the Orders are interlocutory, and the Defendants have failed to establish the criteria for interlocutory review, the joint motion is **DENIED** and this appeal is **DISMISSED** for lack of jurisdiction.

FOR THE PANEL:

Dated: October 30, 2009     By:     /s/ Mary P. Sharon
                                    Mary P. Sharon, Clerk

[cc: Hon. Henry J. Boroff, and, Clerk, U.S. Bankruptcy Court, District of Massachusetts (Eastern Division); and John Fitzgerald, Esq., Richard Pedone, Esq., John Sigel, Esq., Dennis Jenkins, Esq., David Reier, Esq., Laura Otenti, Esq., Nicholas Nesgos, Esq., Lesley Varghese, Esq., Benjamin Loveland, Esq., Chad Shandler, Esq., George Mykulak, Esq., Peter Acton, Esdq., Gina Martin, Esq.]

---

[7] Of course, our denial of the motion for leave to appeal does not resolve the issue finally. Defendants may pursue their standing arguments in an appeal on the merits, if they so choose. What we say today is that the substantial weight of authority tells us there is not the sort of doubt about the issue as to invite piecemeal litigation through authorizing an interlocutory appeal.

14

## General Docket
## United States Bankruptcy Appellate Panel

| **Bankruptcy Appellate Panel Docket #:** 09-57 | **Docketed:** 10/14/2009 |
|---|---|
| In re: The Education Resources Instit, et al v. Wilmington Trust Company, et al | **Termed:** 10/30/2009 |
| **Appeal From:** Bankruptcy Court of MA - Boston | |
| **Fee Status:** filing fee due | |

**Case Type Information:**
   1) bankruptcy appellate panel
   2) Chapter 11 Business-Adversary
   3) nothing

**Originating Court Information:**

**District:** 0101-1 : 08-12540-HJB

**Adversary Proceeding:** 09-01040-HJB

   **Ordering Judge:** Henry J. Boroff, Bankruptcy Appellate Panel Judge
   **Date Filed:** 04/07/2008

**Prior Cases:**
   None

**Current Cases:**

| Related | Lead | Member | Start | End |
|---|---|---|---|---|
| | 09-55 | 09-56 | 10/14/2009 | |
| | 09-55 | 09-57 | 10/14/2009 | |
| | 09-55 | 09-58 | 10/14/2009 | |
| | 09-56 | 09-57 | 10/14/2009 | |
| | 09-56 | 09-58 | 10/14/2009 | |
| | 09-57 | 09-58 | 10/14/2009 | |

**Panel Assignment:**   Not available

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE IN MY OFFICE AND IN MY LEGAL CUSTODY
UNITED STATES BANKRUPTCY APPELLATE PANEL FOR THE FIRST CIRCUIT
BOSTON, MA
By: _____ Date: 10/2/09

In re: THE EDUCATION RESOURCES INSTITUTE, INC.
    Debtor - -

-------------------------------

| | |
|---|---|
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE EDUCATION RESOURCES INSTITUTE, INC.<br>    Plaintiff - Appellee | Nicholas J. Nesgos<br>[COR NTC Retained]<br>Posternak Blankstein & Lund, LLP<br>Firm: 617.973.6145<br>Prudential Tower<br>800 Boylston St.<br>Boston, MA 02199-8004 |

|   |   |
|---|---|
|   | Laura Otenti<br>[COR NTC Retained]<br>Posternak Blankstein & Lund, LLP<br>Firm: 617.973.6145<br>Prudential Tower<br>800 Boylston St.<br>Boston, MA 02199-8004<br><br>David J. Reier<br>[COR NTC Retained]<br>Posternak Blankstein & Lund, LLP<br>Firm: 617.973.6145<br>Prudential Tower<br>800 Boylston St.<br>Boston, MA 02199-8004 |
| v. | |
| WILMINGTON TRUST COMPANY<br>    Defendant - Appellant | Chad M. Shandler<br>[COR NTC Retained]<br>Richards Layton & Finger<br>Firm: 302.651.7700<br>One Rodney Square<br>920 North King St.<br>Wilmington, DE 19801 |
| FIRST MARBLEHEAD DATA SERVICES, INC.<br>    Defendant - Appellant | Dennis L. Jenkins<br>[COR NTC Retained]<br>Wilmer Cutler Pickering Hale and Dorr, LLP<br>Firm: 617.526.6000<br>60 State St.<br>Boston, MA 02109<br><br>Benjamin Loveland<br>[COR NTC Retained]<br>Wilmer Cutler Pickering Hale and Dorr<br>Firm: 617.526.6641<br>60 State St.<br>Boston, MA 02109 |
| ---------------------------- | |
|   | Gina L. Martin<br>[NTC]<br>Goodwin Procter LLP<br>Firm: 617.570.1330<br>59 State St.<br>Exchange Place<br>Boston, MA 02109<br><br>George W. Mykulak |

[COR NTC Retained]
Wilmer Cutler Pickering Hale and Dorr, LLP
Firm: 617.526.6000
60 State St.
Boston, MA 02109

John D. Sigel
Direct: (617) 526-6000
[COR NTC Retained]
HALE AND DORR
60 State Street
Boston, MA 02109-0000

Peter M. Acton, Jr.
[COR NTC Retained]
McDermott Will & Emery LLP
Firm: 617.535.4412
28 State St.
Boston, MA 02109

Richard C. Pedone
Direct: (617) 345-1000
[COR NTC Retained]
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110-0000

Lesley Varghese
[COR NTC Retained]
Nixon Peabody, LLP
Firm: 617.345.1037
100 Summer St.
Boston, MA 02110

John Fitzgerald
[COR NTC Government - Other]
US Trustee's Office
Firm: 617.788.0400
10 Causeway St.
Room 1184
Boston, MA 02222-1001

In re: THE EDUCATION RESOURCES INSTITUTE, INC.,

    Debtor

--------------------------

OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE EDUCATION
RESOURCES INSTITUTE, INC.,

Plaintiff - Appellee

v.

WILMINGTON TRUST COMPANY, and
FIRST MARBLEHEAD DATA SERVICES, INC.,

Defendant - Appellant

| | | |
|---|---|---|
| 10/14/2009 | | Received Notice of Appeal filed at U.S. Bankruptcy Court, District of Massachusetts (Eastern Division) on 10/09/2009, transmittal form, FILED. [09-57] |
| 10/14/2009 | | Appellants Wilmington Trust Company and First Marblehead Data Services, Inc.'s Motion for Leave to Appeal. |
| 10/15/2009 | | The Education Resources Institute, Inc. added. [09-57] |
| 10/19/2009 | | Appellee Official Committee of Unsecured Creditors' Opposition to Appellant's Motion for Leave to Appeal. |
| 10/19/2009 | | Plaintiff-Appellee's Opposition to Appellant's Motion for Leave to Appeal received from U.S. Bankruptcy Court, District of Massachusetts. |
| 10/30/2009 | | Panel assigned [09-57] |
| 10/30/2009 | | HAINES, VAUGHN, and KORNREICH, U.S. Bankruptcy Appellate Panel Judges: JUDGMENT DISMISSING INTERLOCUTORY APPEAL FILED AND ENTERED. [09-57] |